UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ENVIRONMENTAL INTEGRITY
PROJECT,

    Plaintiff,

      v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY,

    Defendant.

Civil Action No. 17-1203 (JDB)

## MEMORANDUM OPINION

Plaintiff Environmental Integrity Project ("EIP") brought this action against Defendant Environmental Protection Agency ("EPA") seeking records of former EPA Administrator Scott Pruitt's travel vouchers and schedule of meetings with outside parties. EPA has since provided all requested documents to EIP. Claiming that it has "substantially prevailed" in its suit, EIP now moves the Court for attorneys' fees pursuant to the fee-shifting provision of 5 U.S.C. § 552(a)(4)(E)(i). For the following reasons, the Court finds that EIP has not substantially prevailed in this FOIA litigation, and thus is not eligible for an award of attorneys' fees.

## BACKGROUND

On May 18, 2017, EIP submitted a FOIA request to EPA seeking records of former EPA Administrator Scott Pruitt's meetings with outside parties and records of his travel from his first day at EPA, February 21, 2017, through the request date. Am. Compl. [ECF No. 17] ¶¶ 21, 24. When the EPA Office of the Executive Secretariat ("OEX") received EIP's request, it determined that the Administrator's calendar and travel vouchers would be responsive. Decl. of Elizabeth White, Ex. 1 to Opp'n to Pl.'s Mot. for Att'ys' Fees [ECF No. 28-1] ¶ 13. The same day that EIP

1

submitted its request, the OEX received Administrator Pruitt's calendar through March 31, 2017 from the staff at the Immediate Office of the Administrator ("OA")[1] in response to separate FOIA requests from third parties. Id. ¶ 14. While this calendar set was responsive to part of EIP's request, it did not satisfy it in full. Mem. of P & A in Supp. of Pl.'s Mot. for Att'ys' Fees ("Pl.'s Mem.") [ECF No. 24-1] at 2–3. OEX staff requested the additional responsive calendar records and travel vouchers from the OA, but the OA was in transition, and its staff changed several times during the twenty-day statutory period. Decl. of Elizabeth White ¶ 15; Opp'n to Pl.'s Mot. for Att'ys' Fees ("Def.'s Opp'n") [ECF No. 28] at 4. Although the OEX requested the additional calendar records four times within this period, its efforts were unsuccessful. Decl. of Elizabeth White ¶ 15. On June 13, 2017, OA staff did provide OEX with the responsive travel vouchers, but the vouchers required review before sending to EIP. Id. ¶¶ 19–21. Twenty-one days after the FOIA request was received, on June 19, 2017, EPA sent EIP the calendar records through March 31, 2017 but did not provide a date by which it would finish production. Id. ¶¶ 17–18. EIP confirmed that the calendar records were responsive to its request for those dates. Ex. 1 to Proposed Briefing Sched. [ECF No. 10-1] at 2. Later that day, EIP filed its complaint. Decl. of Elizabeth White ¶ 18.

One month later, on July 18, 2017, EPA produced the reviewed travel vouchers, and EIP confirmed that the production was responsive to its request. Am. Compl. ¶ 25. On September 27, 2017, EPA produced partially redacted calendars through May 18, 2017, which included updated records of the February 21 through March 31 calendar previously provided, plus an additional travel voucher. Decl. of Elizabeth White ¶¶ 25–26, 30. In the months that followed, EIP raised various questions concerning the bases for redactions in the produced documents. Id. ¶ 31. On

---

[1] The Immediate Office of the Administrator (OA) is the office responsible for maintaining the Administrator's calendar and handling his travel arrangements. Decl. of Elizabeth White ¶ 8.

December 5, 2017, EPA re-released four revised calendar pages which had been redacted in error and removed other redactions as a discretionary matter. Id.; Pl.'s Mem. at 6. EIP then informed EPA that it was satisfied that the information provided resolved its FOIA request. Pl.'s Mem. at 6. EIP subsequently moved for attorneys' fees. Mot. for Att'ys' Fees [ECF No. 24].

## **LEGAL STANDARD**

A court may "assess reasonable attorney fees and other litigation costs reasonably incurred" in the course of FOIA litigation in which the complainant has "substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). Whether an award of attorneys' fees is proper depends on a two-step inquiry of (1) eligibility and (2) entitlement. See Church of Scientology of Cal. v. Harris, 653 F.2d 584, 587 (D.C. Cir. 1981). There is no presumption in favor of awarding fees to complainants who ultimately receive documents, and the court has "broad discretion" when considering whether to grant an award of attorneys' fees. Hall & Associates v. EPA, 210 F. Supp. 3d 13, 19 (D.D.C. 2016) (citing Nationwide Bldg. Maint., Inc. v. Sampson, 559 F.2d 704, 713–14 (D.C. Cir. 1977) ("The single most important element under [FOIA's attorneys' fees provision], however, is the [district] court's discretion.")). The fee-shifting provision of FOIA is not meant to punish an agency for delays in processing requests, but to reward plaintiffs whose lawsuits alter an agency's slowness and bring about disclosure. Terris, Pravlik, & Millian, LLP v. Ctrs. for Medicare & Medicaid Servs., 794 F. Supp. 2d 29, 38 (D.D.C. 2011).

To satisfy the first step, the complainant must "substantially prevail," which means that the institution and prosecution of litigation caused the agency to release responsive documents. Church of Scientology of Cal., 653 F.3d at 587 (citing Cox v. U.S. Dep't of Justice, 601 F.2d 1, 6 (D.C. Cir. 1979)). A complainant may "substantially prevail" by obtaining relief through a "judicial order, or an enforceable written agreement or consent decree" or by obtaining a

"voluntary or unilateral change in position" by the agency. 5 U.S.C. § 552(a)(4)(E)(ii)(I)–(II); Elec. Privacy Info. Ctr. ("EPIC") v. U.S. Dep't of Homeland Sec., 218 F. Supp. 3d 27, 38 (D.D.C. 2016). Whether a plaintiff has "substantially prevailed" is "a question of fact for the District Court . . . ." Terris, Pravlik, & Millian, LLP, 794 F. Supp. 2d at 34.

To satisfy the second step, the plaintiff must establish that it is entitled to receive attorneys' fees. Entitlement is based on factors including: "(i) the public benefit from the case; (ii) the commercial benefit to the plaintiff; (iii) the nature of the plaintiff's interest in the records; and (iv) the reasonableness of the agency's withholding of the requested documents. Morley v. CIA, No. 17-5114, 2018 WL 3351383 at *1 (D.C. Cir. July 9, 2018) (citing Davy v. CIA, 550 F.3d 1155, 1159 (D.C. Cir. 2008)). However, the Court need not proceed to the entitlement prong if the eligibility prong is not met. See Brayton v. Office of the U.S. Trade Representative, 641 F.3d 521, 524 (D.C. Cir. 2011).

## ANALYSIS

EIP argues that it is eligible for attorneys' fees under the "catalyst theory" because its lawsuit caused EPA to change its position by producing the responsive documents. Pl.'s Mem. at 8. Specifically, EIP contends that: "(i) EPA changed its position when it released records responsive to EIP's FOIA request after stating earlier in its answer that EIP was not entitled to the relief sought; (ii) EIP's lawsuit caused EPA to process records more quickly than it would have without the litigation; and (iii) EIP's amended complaint alleging improper withholding caused EPA's discretionary disclosure of records previously redacted under FOIA exemptions." Id. EIP also briefly asserts that the Court's August 21, 2017 briefing schedule order constitutes a "court order" under 5 U.S.C. § 552(a)(4)(E)(ii)(I). Id. at 9. In opposition, EPA asserts that the lawsuit was not necessary to compel the production of documents because EPA began searching for

records before EIP filed its complaint, and, upon actual and reasonable notice of the request, EPA made a good-faith effort to search for responsive records and decide whether such material should be disclosed. Def.'s Opp'n at 9.

To "substantially prevail" and receive attorneys' fees, EIP must prove that it caused a voluntary or unilateral change in EPA's position by filing its complaint. See Conservation Force v. Jewell, 160 F. Supp. 3d 194, 205 (D.D.C. 2016) (quoting Weisberg v. U.S. Dep't of Justice, 745 F.2d 1476, 1496 (D.C. Cir. 1984)). The key question under the "catalyst theory" is whether "the institution and prosecution of the litigation cause[d] the agency to release the documents obtained during the pendency of the litigation." Church of Scientology of Cal., 653 F.2d at 588. There must be a causal nexus between the initiation of litigation and the agency's surrender of the requested information, and a plaintiff must do more than claim post hoc, ergo propter hoc ("after this, therefore because of this") to prove that a causal nexus exists. See Pub. Law Educ. Inst. v. U.S. Dep't of Justice, 744 F.2d 181, 183 (D.C. Cir. 1984). In the context of attorneys' fees, "the mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation." Codrea v. Bureau of Alcohol, Tobacco, Firearms & Explosives, 272 F. Supp. 3d 49, 53 (D.D.C. 2017) (quoting Weisberg, 745 F.2d at 1496). If an "unavoidable delay accompanied by due diligence in the administrative processes was the actual reason for the agency's failure to respond to a request, it cannot be said that the complainant substantially prevailed in [its] suit." Church of Scientology of Cal., 653 F.2d at 588 (quoting Cox, 601 F.2d at 6).

A.  **EPA'S RELEASE OF RESPONSIVE AND PREVIOUSLY REDACTED RECORDS**

EIP claims that EPA changed its position when it complied with EIP's FOIA request after its answer had stated that EIP "failed to state a claim on which relief can be granted," and denied that it had "knowledge or information sufficient to form a belief as to whether it has possession,

5

custody, and control of the particular records Plaintiff seeks." Pl.'s Mem. at 9; Def.'s Answer [ECF No. 8] ¶ 15. The key question is whether "hard evidence—beyond temporal proximity—supports the inference that the plaintiff's lawsuit caused the document release." Conservation Force, 160 F. Supp. 3d at 206 (finding no hard evidence beyond temporal proximity where "[n]o averments or other facts in the instant record indicate that Defendants only produced these documents because of [Plaintiff's] lawsuit … nor was there any about-face from an initial agency refusal"); see also Pyramid Lake Paiute Tribe of Indians v. U.S. Dep't of Justice, 750 F.2d 117, 120 (D.C. Cir. 1984) ("Absent any evidence on the matter, the natural inference is that [defendant] was simply responding to [plaintiff's] request.").

Here, it does not appear that EPA did in fact change its position, much less that the lawsuit caused such a change. The fact that EPA asserted the affirmative defense that EIP failed to state a claim that EPA violated FOIA does not suggest EPA was unwilling to answer the FOIA request. Similarly, EPA's assertion that it had insufficient information to determine whether it possessed the requested documents does not suggest that EPA was refusing to search for the records. EPA had made requests internally for the records before the lawsuit was ever filed. Decl. of Elizabeth White ¶¶ 13–15, 19. Nothing in EPA's answer suggests that the agency refused to search for or release responsive documents to EIP prior to EIP's filing of the complaint. Cf. Dorsen v. SEC, 15 F. Supp. 3d 112, 119–20 (D.D.C. 2014) (finding plaintiff was eligible for attorneys' fees after agency initially withheld responsive documents and released the documents one day after complaint was filed). Absent evidence in the record to support that EPA only complied because of the lawsuit, the natural inference is that EPA was simply responding to EIP's request by releasing the responsive records. See Pyramid Lake Paiute Tribe of Indians, 750 F.2d at 120.

EIP also asserts that EPA's decision to release corrected and previously redacted records after EIP filed an amended complaint demonstrates further "voluntary or unilateral change in position." Pl.'s Mem. at 10. But EIP and EPA began discussing the redactions on September 27, 2017, and EIP did not file its amended complaint until October 12, 2017. Decl. of Elizabeth White ¶ 31; Am. Compl. [ECF No. 17]. While it may be relevant that a defendant released documents after a plaintiff filed the complaint as a purely chronological matter, "it is also clear beyond cavil that the catalyst method requires more." Conservation Force, 160 F. Supp. 3d at 206. EIP does not claim any causal nexus between the Amended Complaint and EPA's disclosures besides temporal proximity, which is insufficient to prove causation. EIP's bare reliance on "post hoc, ergo propter hoc" fails to establish a causal nexus between the litigation and release. See Pub. Law Educ. Inst., 744 F.2d at 183.

EIP's reliance on Judicial Watch v. U.S. Department of Justice, 878 F. Supp. 2d 225 (D.D.C. 2012), to support its claim is misplaced. There, the defendant's production of previously-withheld documents resulted from the agency's review of records conducted after the end of administrative processing and in the course of preparing for litigation. Id. at 233. The court therefore held that the defendant agency's discretionary disclosure of previously-withheld documents while preparing a motion for summary judgment constituted a "voluntary or unilateral change in position." Id. at 232–33. But unlike the agency there, here EPA did not defend its redactions throughout administrative proceedings and litigation; instead, EPA promptly conferred with EIP and sought to address EIP's concerns. See Decl. of Elizabeth White ¶ 31. Hence, the connection between this suit and EPA's release of redacted documents is too attenuated to indicate that EIP substantially prevailed and is eligible for attorneys' fees.

## B. EPA'S DELAY IN PRODUCING RESPONSIVE RECORDS

EIP next asserts that EPA's production of responsive records two days before filing its initial answer, after failing to provide an estimated date by which it would make the production, constitutes a "sudden acceleration" following a delay that supports the conclusion that the lawsuit caused EPA's FOIA compliance. Pl.'s Mem. at 10. EPA does not dispute that there was a delay in production, but claims that the delay was unavoidable and that it exercised due diligence. Def.'s Opp'n at 13.

"Sudden acceleration" in the processing of a FOIA request resulting in disclosure made after a lawsuit is filed may "lead a court to conclude that . . . the filing of the lawsuit was the real reason for that acceleration." Terris, Pravlik, & Millian, LLP, 794 F. Supp. 2d at 38 (citing Crooker v. U.S. Dep't of the Treasury, 663 F.2d 140 (D.C. Cir. 1980)). However, if an "unavoidable delay accompanied by due diligence in the administrative processes was the actual reason for the agency's failure to respond to a request, then it cannot be said that the complainant substantially prevailed in [its] suit." Church of Scientology of Cal., 653 F.2d at 588 (quoting Cox, 601 F.2d at 6). Courts have found that a delay may be unavoidable when the agency is insufficiently staffed to respond to FOIA requests. See Conservation Force, 160 F. Supp. 3d at 206 (finding no causal nexus when defendant's delayed release was caused by the agency having only one employee tasked with processing FOIA requests, having a policy of processing FOIA requests in sequential order, and mistakenly referring the plaintiff's request to a different agency for processing).

When EIP filed its FOIA request, OEX had only three staff members responsible for reviewing and processing records potentially responsive to FOIA requests; the same three staffers were also dealing with over 100 backlogged FOIA requests from the previous year. Decl. of Elizabeth White ¶¶ 8, 10. At the time, EPA faced a 1200% increase in FOIA requests compared

8

with the same time period the previous year. Id. ¶ 9. EPA also faced ten pending lawsuits on FOIA requests, over which the same three OEX employees presided. Id. ¶ 11. During August and September of 2017, while EPA was preparing to produce the remaining calendar and travel records, the Chief of Staff's ability to review records was hindered by the impact of Hurricanes Harvey, Irma, and Maria. Id. ¶ 29. All of these factors support the conclusion that unintentional administrative burdens and unavoidable outside factors delayed EPA's response, and that EIP's lawsuit did not cause the eventual release.

The record also demonstrates that in the face of these unavoidable factors, EPA exercised due diligence to ensure the request was processed. Courts have held that a plaintiff's lawsuit was not the catalyst for an agency's delayed release of documents when the defendant made a good-faith effort to search for information and respond to the FOIA request, and the ultimate release was the result of a diligent, ongoing process that began before the initiation of the lawsuit. See, e.g., Calypso Cargo Ltd. v. U.S. Coast Guard, 850 F. Supp. 2d 1, 5 (D.D.C. 2011) (holding that Coast Guard had begun processing request shortly after receiving it and before plaintiff filed complaint); Bigwood v. Def. Intelligence Agency, 770 F. Supp. 2d 315, 321 (D.D.C. 2011) (holding that although production was "extraordinarily delayed," the agency searched for and reviewed documents prior to litigation, so no causal nexus existed between the litigation and release). Here, EPA conducted a search for responsive documents before EIP filed the complaint. Decl. of Elizabeth White ¶¶ 13, 20. On the same day EIP filed its FOIA request, EPA obtained a partially responsive version of Administrator Pruitt's calendar and then later sent it to EIP before litigation commenced. Id. ¶ 14. Also before EIP filed the complaint, OEX staff requested the remaining responsive calendar files from OA and received the travel voucher records from OEX. Id. ¶¶ 15,

19. These actions reflect a good faith effort to respond to EIP's request and a diligent ongoing process that began before the initiation of the lawsuit.

EIP points to statements made in the course of litigation to support its assertion that EPA was not in fact exercising due diligence. Because EPA asserted in its answer the affirmative defense that EIP's request was "overbroad" and EPA did not request clarification of the request, EIP claims EPA's searches for documents must not have been reasonable. Reply in Supp. of Pl.'s Mot. for Att'ys' Fees and Costs [ECF No. 31] at 8. Failure to request clarification could result in an ineffectual search not reasonably calculated to produce responsive results. See, e.g., Pinson v. U.S. Dep't of Justice, 61 F. Supp. 3d 164, 180–81 (D.D.C. 2015) (finding the government's search was not "reasonable [or] adequate" when it did not request necessary supplemental information before running the search). Here, however, nothing suggests that EPA lacked sufficient information or that its searches were not calculated to locate responsive documents. EPA had already released some calendar records to EIP before the filing of the lawsuit and then released responsive travel records before it filed its answer. Decl. of Elizabeth White ¶¶ 18, 21. It appears that clarification of EIP's request was unnecessary—and indeed was not provided.

EPA's failure to use FOIA's statutory mechanisms to extend its time to respond to EIP's request also is not indicative of a lack of due diligence. An agency may extend FOIA's twenty-day statutory time limit by notifying the requester and providing the requester with an opportunity to either limit the scope of the request or arrange an alternate time frame. 5 U.S.C. § 552(a)(6)(B)(i)–(ii). An agency that does not take advantage of FOIA's statutory mechanisms to extend its response time cannot rely on the administrative exhaustion requirement as a bar to judicial review. 5 U.S.C. § 552(a)(6)(C)(i); Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n, 711 F.3d 180, 190 (D.C. Cir. 2013). However, "not all agency delay or failure

to comply with FOIA's procedural requirements will warrant judicial intervention . . . ." Judicial Watch v. U.S. Dep't of Homeland Sec., No. 16-5339, slip op. at 19 (D.C. Cir. July 17, 2018) (citing 5 U.S.C. § 552(a)(6)(c)). Here, EPA did not inform EIP of its intent to fulfill the request or provide EIP a date by which it would finish the production within the twenty-day statutory timeline. Am. Compl. ¶ 23; Decl. of Elizabeth White ¶ 17. Although such a failure may support a claim that an agency has a policy or practice of violating FOIA's procedural requirements, see Judicial Watch v. U.S. Dep't of Homeland Sec., No. 16-5339, slip op. at 3 (D.C. Cir. July 17, 2018), it does not suggest in this case that EPA lacked due diligence in responding to EIP's request. Given that EPA has not relied on the administrative exhaustion requirement to bar this lawsuit and began processing and responding to EIP's request before EIP filed its complaint, EPA's failure to adhere to statutory mechanisms does not establish that EIP's lawsuit caused EPA's release of responsive documents.

## C. THE COURT'S AUGUST 21, 2017 ORDER

EIP also suggests that it has "substantially prevailed" because the Court's August 21, 2017 scheduling order constitutes a "judicial order, or an enforceable written agreement or consent decree" through which it obtained relief. See Pl.'s Mem. at 9; 5 U.S.C. § 552(a)(4)(E)(ii)(I). A scheduling order may constitute such "relief" when it requires the defendant to produce responsive documents by a particular date. See EPIC, 218 F. Supp. 3d at 39 (holding that a Scheduling Order requiring the defendant agency to produce documents by a certain date changed the legal relationship of the parties and caused the plaintiff to substantially prevail.). But the August 21, 2017 order merely required EIP and EPA to confer on and submit a proposed briefing schedule for the filing of dispositive motions. Unlike mandating the production of documents by a specific date, ordering the parties to confer on a briefing schedule does not change their legal relationship.

11

See EPIC, 218 F. Supp. 3d at 39. More fundamentally, the August 21, 2017 Order did not provide EIP with any "relief." Hence, EIP's motion for attorneys' fees cannot prevail on the judicial order theory.

## **CONCLUSION**

EIP has failed to demonstrate that it substantially prevailed in its FOIA litigation. Therefore, it is not eligible to recover under the cost-shifting provision of FOIA, and its Motion for Attorneys' Fees is denied. A separate order has been issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: July 25, 2018